**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZHOIE PEREZ, | ) NO. CV 22-8227 SVW (AS) |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION OF A** |
| CITY OF LOS ANGELES, et al., | ) **UNITED STATES MAGISTRATE JUDGE** |
| Defendants. | ) |

This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On November 10, 2022, Zhoie Perez ("Plaintiff") filed a pro se Complaint ("Complaint") raising federal and state law claims against the City of Los Angeles ("City"), Los Angeles Police Department Officers Rios and Walker, Claude Jabsi, and John Does 1-5. (Docket

1    ("Dkt.") No. 1).   On December 2, 2022, Jabsi filed an Answer to the

2    Complaint, and on December 5, 2022, the City and Officers Rios and

3    Walker (collectively "City Defendants") filed an Answer to the

4    Complaint.  (Dkt. Nos. 5, 8).

5

6         On February 14, 2023, Plaintiff filed a Motion for Leave to File

7    a First Amended Complaint, which the Court granted on March 15, 2023.

8    (Dkt. Nos. 22, 35).

9

10        On March 28, 2023, Plaintiff filed a First Amended Complaint

11   ("FAC") raising six federal and state law claims against the City

12   Defendants, Jabsi, Navia Brito, Leszek Semik, the Archdiocese of Los

13   Angeles Risk Management Corporation ("Archdiocese") and John Does 1-2.

14   (Dkt. No. 37).

15

16        On April 20, 2023, Jabsi filed an Answer to the FAC, and the

17   Archdiocese and Semik (collectively "Moving Defendants") each filed

18   Motions to Dismiss the FAC with accompanying memoranda of points and

19   authorities ("Archdiocese Mem." & "Semik Mem.").  (Dkt. Nos. 51, 54-

20   55).

21

22        On April 26, 2023, Claims 1-3 of the FAC were dismissed with

23   prejudice against the City Defendants.  (Dkt. No. 60).  The next day,

24   the City Defendants filed an Answer to the FAC.  (Dkt. No. 61).

25

26        On May 8, 2023, Plaintiff filed an Opposition to the Archdiocese's

27   Motion to Dismiss.  (Dkt. No. 62).  The Moving Defendants each filed

28   Replies on May 18, 2023.  (Dkt. Nos. 66-67).

1    For the reasons set forth below, the Moving Defendants' Motions to

2    Dismiss should be GRANTED, in part, and DENIED.

3

4                                    **II.**

5                         **PLAINTIFF'S ALLEGATIONS**

6

7        Plaintiff is "a Transgender woman of color," who in December 2020,

8    "was doing a news story" on "the staff and the congregants" of the St.

9    Anastasia Catholic Church "violating the Health Department requirements

10   at that time for religious services by not adhering to mask and social

11   distancing mandates." (FAC, ¶¶ 7-8, 19). Plaintiff was filming from

12   the public sidewalk and never entered the church's property. (FAC, ¶¶

13   8, 14). After Plaintiff had been filming for eleven minutes, staff and

14   congregants called the police on Plaintiff. (FAC, ¶ 9).

15

16       After seventeen minutes, Jabsi arrived in his vehicle, stopped,

17   approached Plaintiff, and grabbed and threatened her. (FAC, ¶ 10).

18   Plaintiff pulled away and showed Jabsi her pepper spray in an attempt

19   to diffuse the situation. (Id.). Jabsi then returned to his vehicle,

20   drove into the church parking lot and parked his vehicle, "threatening

21   [Plaintiff] along the way." (Id.). Jabsi – joined by two other men –

22   then ran toward Plaintiff, and Jabsi attacked her, striking her and her

23   equipment until Plaintiff sprayed him with pepper spray and Jabsi

24   retreated to his vehicle. (Id.). Thereafter, Jabsi drove his vehicle

25   toward Plaintiff, barely missing her. (Id.). He then backed his

26   vehicle up and drove at Plaintiff a second time, striking her and

27   knocking her back about eight feet. (Id.). Jabsi then tried to hit

28   Plaintiff a third time, but missed. (Id.). Jabsi subsequently backed

his vehicle onto church property and yelled at Plaintiff "'You're lucky I didn't fucking kill you.'"  (Id.).

Following these incidents, Brito attacked Plaintiff twice.  (FAC, ¶ 10).

Approximately seventeen minutes later, Officers Rios and Walker arrived and, without performing any investigation, handcuffed Plaintiff and put her in the back of their patrol vehicle.  (FAC, ¶ 11). Plaintiff requested that Officers Rios and Walker arrest the two people who attacked her, but the Officers let them leave and arrested Plaintiff instead.  (FAC, ¶¶ 12-13).  Plaintiff complains that Brito, Jabsi and Semik all made false allegations about Plaintiff, stating she said "'I'm going to kill you all.'"  (FAC, ¶ 13).

Plaintiff was transported to the police station, where she was held for over eight hours before being released without being charged with a crime.  (FAC, ¶¶ 13, 15).

Based on these allegations, Plaintiff raises the following four claims against each Defendant: (1) violation of the Ralph Civil Rights Act ("Ralph Act"), Cal. Civ. Code § 51.7; (2) violation of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1; (3) false imprisonment; and (4) a First Amendment violation brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  (FAC, ¶¶ 18-36).  Additionally, in Claims Five and Six, Plaintiff raises Section 1983 claims against the City Defendants, alleging they violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from an unlawful search and

1    seizure.  (FAC, ¶¶ 37-38).  Plaintiff seeks damages (Claims One to Six)

2    and civil penalties (Claims One to Two).  (FAC at 11-12).

3

4                              **III.**

5                      **STANDARD OF REVIEW**

6

7        The Archdiocese and Semik seek dismissal of Plaintiff's FAC

8    pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Archdiocese Mem.

9    at 2-5; Semik Mem. at 2-5).

10

11       **A.   Rule 12(b)(1)**

12

13       Rule 12(b)(1) authorizes a party to file a motion to challenge the

14   Court's subject matter jurisdiction.[1]  "An attack on subject matter

15   jurisdiction may be facial or factual."  Edison v. United States, 822

16   F.3d 510, 517 (9th Cir. 2016); Leite v. Crane Co., 749 F.3d 1117, 1121

17   (9th Cir. 2014).  In this case, the Archdiocese and Semik raise facial

18   attacks on the Court's jurisdiction, which means they are asserting

19   that "'the allegations contained in [the Complaint] are insufficient on

20   their face to invoke federal jurisdiction.'"[2]  Edison, 822 F.3d at 517

21   _____

22       [1]  Moreover, the Court has "an independent obligation to determine
     whether subject-matter jurisdiction exists, even in the absence of a
23   challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 514
     (2006); see also Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d
24   890, 894 (9th Cir. 2011) (A federal court "is obligated to determine
     sua sponte whether it has subject matter jurisdiction.").
25

26       [2]  "'By contrast, in a factual attack, the challenger disputes the
     truth of the allegations that, by themselves, would otherwise invoke
27   federal jurisdiction.'"  Edison, 822 F.3d at 517 (quoting Safe Air for
     Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "When the
28   defendant raises a factual attack, the plaintiff must support her

1    (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.

2    2004)).   The Court "resolves a facial attack as it would a motion to

3    dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as

4    true and drawing all reasonable inferences in the plaintiff's favor,

5    the court determines whether the allegations are sufficient as a legal

6    matter to invoke the court's jurisdiction."   Leite, 749 F.3d at 1121;

7    Hyatt v. Yee, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).   In making this

8    assessment, the Court liberally construes Plaintiff's *pro se* pleadings.

9    Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Haines v.

10   Kerner, 404 U.S. 519, 520 (1972) (per curiam).

11

12       **B.   Rule 12(b)(6)**

13

14       A Rule 12(b)(6) motion to dismiss for failure to state a claim

15   should be granted if a plaintiff fails to proffer "enough facts to

16   state a claim to relief that is plausible on its face."   Bell Atl.

17   Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S.

18   662, 678 (2009).   "A claim has facial plausibility when the plaintiff

19   pleads factual content that allows the court to draw the reasonable

20   inference that the defendant is liable for the misconduct alleged."

21   Iqbal, 556 U.S. at 678; Hartmann v. Cal. Dep't of Corr. & Rehab., 707

22   F.3d 1114, 1121-22 (9th Cir. 2013).   Although a plaintiff must provide

23   "more than labels and conclusions, and a formulaic recitation of the

24   elements of a cause of action will not do[,]" Twombly, 550 U.S. at 555;

25   Iqbal, 556 U.S. at 678, "[s]pecific facts are not necessary; the

26   _____

27   jurisdictional allegations with 'competent proof,' under the same
     evidentiary standard that governs in the summary judgment context."
28   Leite, 749 F.3d at 1121 (citation omitted).

1  [complaint] need only give the defendant[s] fair notice of what the

2  . . . claim is and the grounds upon which it rests." Erickson, 551

3  U.S. at 93 (citations and internal quotation marks omitted); Twombly,

4  550 U.S. at 555.

5

6      In considering whether to dismiss a complaint, the Court must

7  accept the factual allegations of the complaint as true, Wood v. Moss,

8  572 U.S. 744, 755 n.5 (2014); Erickson, 551 U.S. at 93-94, construe the

9  pleading in the light most favorable to the pleading party, and resolve

10  all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411,

11  421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro

12  se pleadings are "to be liberally construed" and are held to a less

13  stringent standard than those drafted by a lawyer. Erickson, 551 U.S.

14  at 94; Haines, 404 U.S. at 520; see also Hebbe v. Pliler, 627 F.3d 338,

15  342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard

16  and *Twombly* did not alter courts' treatment of pro se filings;

17  accordingly, we continue to construe pro se filings liberally when

18  evaluating them under *Iqbal*."). Dismissal for failure to state a claim

19  can be warranted based on either the lack of a cognizable legal theory

20  or the absence of factual support for a cognizable legal theory. See

21  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

22  2008). A complaint may also be dismissed for failure to state a claim

23  if it discloses some fact or complete defense that will necessarily

24  defeat the claim. Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902

25  (9th Cir. 2013).

26  \\

27  \\

28  \\

**IV.**

**DISCUSSION**

**A.    The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (citations omitted); <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]"  <u>Kokkonen</u>, 511 U.S. at 377 (citations omitted); <u>see</u> <u>also</u> <u>Bishop Paiute Tribe v. Inyo Cnty.</u>, 863 F.3d 1144, 1151 (9th Cir. 2017) ("'The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction.'" (citation omitted)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); <u>see</u> <u>also</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (citation omitted)).

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332."  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 513 (2006); <u>see</u> <u>also</u> <u>Peralta v. Hispanic Bus., Inc.</u>, 419 F.3d 1064, 1068 (9th Cir. 2005) ("In civil cases, subject

1    matter jurisdiction is generally conferred upon federal district courts

2    either through diversity jurisdiction, 28 U.S.C. § 1332, or federal

3    question jurisdiction, 28 U.S.C. § 1331.").  "Because the parties in

4    this case are non-diverse, the only avenue to federal court is if the

5    parties can establish federal question jurisdiction under 28 U.S.C. §

6    1331."[3]  Negrete v. City of Oakland, 46 F.4th 811, 816 (9th Cir. 2022),

7    cert. denied, 143 S. Ct. 781 (2023).

8

9        Federal district courts have original jurisdiction over "all civil

10   actions arising under the Constitution, laws, or treaties of the United

11   States."  28 U.S.C. § 1331.  "A plaintiff properly invokes § 1331

12   jurisdiction when she pleads a colorable claim 'arising under' the

13   Constitution or laws of the United States."  Arbaugh, 546 U.S. at 513;

14   see also Tijerino v. Stetson Desert Project, LLC, 934 F.3d 968, 975

15   (9th Cir. 2019) ("A complaint for relief properly invokes federal

16   jurisdiction where its well-pleaded allegations establish 'either that

17   federal law creates the cause of action or that the plaintiff's right

18   to relief necessarily depends on resolution of a substantial question

19   of federal law.'" (quoting Franchise Tax Bd. of State of Cal. v.

20   Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28

21   (1983))).  However, a federal court lacks subject matter jurisdiction

22   to consider claims that are "'so insubstantial, implausible, foreclosed

23

24       [3] "[D]iversity jurisdiction does not exist unless *each* defendant
     is a citizen of a different State from *each* plaintiff."  Owen Equip. &
25   Erection Co. v. Kroger, 437 U.S. 365, 373 (1978)(emphasis in original).
     Here, there is no diversity jurisdiction since Plaintiff alleges she is
26   a Los Angeles County resident, she has sued the City of Los Angeles,
     and she alleges "the Defendants either live or conduct business in" Los
27   Angeles County.  (See FAC, ¶¶ 1-2, 6); see also Peralta, 419 F.3d at
     1069 ("There is no diversity jurisdiction here because Peralta and HBI
28   are both California citizens.").

1   by prior decisions of this Court, or otherwise completely devoid of

2   merit as not to involve a federal controversy.'" Steel Co., 523 U.S.

3   at 89 (1998) (citations omitted); see also Shapiro v. McManus, 577 U.S.

4   39, 45 (2015) (If a complaint is "'wholly insubstantial and

5   frivolous[,]'" it will "fail[] to raise a substantial federal question

6   for jurisdictional purposes." (citations omitted)); Arbaugh, 546 U.S.

7   at 513 n.10 ("A claim invoking federal-question jurisdiction under 28

8   U.S.C. § 1331 . . . may be dismissed for want of subject-matter

9   jurisdiction if it is not colorable, i.e., if it is 'immaterial and

10  made solely for the purpose of obtaining jurisdiction' or is 'wholly

11  insubstantial and frivolous.'" (quoting Bell v. Hood, 327 U.S. 678,

12  682-83 (1946))).

13

14      The Archdiocese and Semik contend that the FAC does not establish

15  subject matter jurisdiction over them because Plaintiff has not stated

16  a federal claim against them.  (Archdiocese Mem. at 2-3; Semik Mem. at

17  2-3).  However, "[t]he failure to state a federal claim, either on the

18  pleadings or the facts, is not the same thing as a failure to establish

19  subject matter jurisdiction."  Cement Masons Health & Welfare Trust

20  Fund for N. Cal. v. Stone, 197 F.3d 1003, 1008 (9th Cir. 1999); see

21  also Trustees of Screen Actors Guild–Producers Pension & Health Plans

22  v. NYCA, Inc., 572 F.3d 771, 775 (9th Cir. 2009) ("The two concepts,

23  [lack of subject-matter jurisdiction under Federal Rule of Civil

24  Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6)],

25  are distinct: 'the former determines whether the plaintiff has a right

26  to be in the particular court and the latter is an adjudication as to

27  whether a cognizable legal claim has been stated.'" (quoting 5B Wright

28  & Miller, Federal Practice and Procedure § 1530 (3d ed. 2004)); Reddi

1   v. Hughes & Hughes LLP, 2015 WL 13604253, *4 (C.D. Cal. 2015) ("But the

2   question of whether [Plaintiff] has sufficiently stated a claim under

3   federal law is distinct from whether the Court has subject-matter

4   jurisdiction over those claims."), affirmed by, 695 F. App'x 279 (9th

5   Cir. 2017).  "'Any non-frivolous assertion of a federal claim suffices

6   to establish federal question jurisdiction, even if that claim is later

7   dismissed on the merits.'"  Cook Inlet Region, Inc. v. Rude, 690 F.3d

8   1127, 1131 (9th Cir. 2012) (quoting Cement Masons Health & Welfare

9   Trust Fund for N. Cal., 197 F.3d at 1008).

10

11      Here, the Court has subject matter jurisdiction over this action,

12   which, among other things, raises Section 1983 claims alleging that the

13   Defendants – including the Archdiocese and Semik – violated Plaintiff's

14   constitutional rights.[4]  See Sinclair v. City of Seattle, 61 F.4th 674,

15   678 (9th Cir. 2023) ("The district court had federal question

16   jurisdiction over Sinclair's § 1983 claim against the City pursuant to

17   28 U.S.C. § 1331."), pet. for cert. filed, __ S. Ct. __, (May 30,

18   2023); Shah v. Cnty. of Los Angeles, 797 F.2d 743, 745 n.2 (9th Cir.

19   1986) ("If a plaintiff in his or her complaint invokes section 1983 as

20   a jurisdictional basis and attempts to state a claim under section

21   1983, that is enough to establish subject matter jurisdiction."):

22   Reddi, 2015 WL 13604253 at *4 ("[T]his Court has subject-matter

23   jurisdiction over Reddi's 42 U.S.C. § 1983 claims because the claims

24   arise under federal law: even if Reddi cannot obtain relief under

25   federal law, the Court still retains subject matter jurisdiction and

26   must decide the merits of Reddi's federal claims under Federal Rule of

27   _____

28      [4]  The Court also has supplemental jurisdiction over Plaintiff's
        state law claims against Defendants.  28 U.S.C. § 1367.

1   Civil Procedure 12(b)(6).”); <u>Shalaby v. Jacobowitz</u>, 2003 WL 1907664, *5

2   n.2 (C.D. Cal. 2003) (“Jacobowitz argues that the Court lacks

3   jurisdiction of plaintiff’s section 1983 claim and therefore it should

4   be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  The

5   issue, however, is not jurisdiction; the issue is whether plaintiff

6   states a claim.”), <u>affirmed</u> <u>by</u>, 138 F. App’x 10 (9th Cir. 2005).

7

8   **B.**     **Plaintiff’s Section 1983 Claim Against The Moving Defendants**

9          **Should Be Dismissed With Leave To Amend**

10

11      In Claim Four, Plaintiff raises a Section 1983 claim against all

12  Defendants – including the Moving Defendants – for the alleged

13  violation of Plaintiff’s First Amendment rights.  (FAC, ¶ 36).

14

15      “To state a claim for relief in an action brought under § 1983,

16  [Plaintiff] must establish that [she was] deprived of a right secured

17  by the Constitution or laws of the United States, and that the alleged

18  deprivation was committed under color of state law.”  <u>American Mfrs.</u>

19  <u>Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); <u>West v. Atkins</u>,

20  487 U.S. 42, 48 (1988).  “The traditional definition of acting under

21  color of state law requires that the defendant in a § 1983 action have

22  exercised power ‘possessed by virtue of state law and made possible

23  only because the wrongdoer is clothed with the authority of state

24  law.’”  <u>West</u>, 487 U.S. at 49, 108 S. Ct. at 2255 (citations omitted);

25  <u>McDade v. West</u>, 223 F.3d 1135, 1139 (9th Cir. 2000).  Thus, “the under-

26  color-of-state-law element of § 1983 excludes from its reach merely

27  private conduct, no matter how discriminatory or wrongful.”  <u>American</u>

28  <u>Mfrs. Mut. Ins. Co.</u>, 526 U.S. at 50 (citations and internal quotation

1    marks omitted); <u>Heineke v. Santa Clara Univ.</u>, 965 F.3d 1009, 1012 (9th

2    Cir. 2020).

3

4         Here, it is undisputed that the Archdiocese and Semik are private

5    parties.  (<u>See</u> Archdiocese Mem. at 3; Semik Mem. at 3; Opposition at 2-

6    5).  "A civil rights plaintiff suing a private [party] under § 1983

7    must demonstrate that the private [party] acted under color of state

8    law . . . [because] Section 1983 liability attaches only to individuals

9    'who carry a badge of authority of a State and represent it in some

10   capacity.'"    <u>Franklin v. Fox</u>, 312 F.3d 423, 444 (9th Cir. 2002)

11   (citation omitted); <u>West</u>, 487 U.S. at 49; <u>see also</u> <u>King v. Cnty. of Los</u>

12   <u>Angeles</u>, 885 F.3d 548, 556 (9th Cir. 2018) ("'The purpose of § 1983 is

13   to deter state actors from using the badge of their authority to

14   deprive individuals of their federally guaranteed rights.'" (quoting

15   <u>McDade</u>, 223 F.3d at 1139)).  "'The Supreme Court has articulated four

16   tests for determining whether a private [party's] actions amount to

17   state action: (1) the public function test; (2) the joint action test;

18   (3) the state compulsion test; and (4) the governmental nexus test.'"

19   <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1140 (9th Cir. 2012)

20   (citation omitted); <u>Pasadena Republican Club v. Western Justice Ctr.</u>,

21   985 F.3d 1161, 1167 (9th Cir.), <u>cert. denied</u>, 142 S. Ct. 337 (2021).

22   "When addressing whether a private party acted under color of state

23   law, [the Court] start[s] with the presumption that private conduct

24   does not constitute governmental action."   <u>Sutton v. Providence St.</u>

25   <u>Joseph Med. Ctr.</u>, 192 F.3d 826, 835 (9th Cir. 1999); <u>Heineke</u>, 965 F.3d

26   at 1012.  Plaintiff has not overcome this presumption.

27

28

1   In evaluating whether Plaintiff has properly alleged state action,
2   this Court "begins by identifying 'the specific conduct of which the
3   plaintiff complains.'"   American Mfrs. Mut. Ins. Co., 526 U.S. at 51
4   (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)); Rawson v.
5   Recovery Innovations, Inc., 975 F.3d 742, 747 (9th Cir. 2020), cert.
6   denied, 142 S. Ct. 69 (2021).   Here, with regard to the Moving
7   Defendants, Plaintiff alleges church "staff and congregants" called the
8   police on Plaintiff because she was "filming [them from] the public
9   sidewalk."[5]  (FAC, ¶ 9).   Plaintiff also asserts that Semik, Brito and
10  Jabsi falsely claimed that Plaintiff "said 'I'm going to kill you
11  all.'"[6]  (FAC, ¶¶ 12-13; see also Opposition at 1-5 ("[T]he Church and
12  it's employees lied to the police about the Plaintiff[.]")).

13

14

15  _____

16  [5] Plaintiff also asserts that the "LAPD Officers . . . conspired
    with the church staff and the criminals to arrest [Plaintiff] and let
17  the criminals go free."  (FAC, ¶ 12).   However, such a vague and
    conclusory allegation is insufficient to support Plaintiff's Section
18  1983 claim.  See Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014)
    ("'Vague and conclusory allegations of official participation in civil
19  rights violations are not sufficient to withstand a motion to
    dismiss.'"); Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989)
20  ("To state a claim for a conspiracy to violate one's constitutional
    rights under section 1983, the plaintiff must state specific facts to
21  support the existence of the claimed conspiracy.").

22
    [6] Plaintiff's conspiracy allegations invoke state action under a
23  "joint action" theory.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152
    (1970); see also O'Handley v. Weber, 62 F.4th 1145, 1159 (9th Cir.
24  2023) ("A plaintiff can show joint action either 'by proving the
    existence of a conspiracy or by showing that the private party was a
25  willful participant in joint action with the State or its agents.'"
    (quoting Tsao, 698 F.3d at 1140)), pet. for cert. filed, (June 12,
26  2023); Brunette v. Humane Soc'y, 294 F.3d 1205, 1211 (9th Cir. 2002)
    ("A conspiracy between the State and a private party to violate
27  another's constitutional rights may . . . satisfy the joint action
    test.").
28

1    However, "merely complaining to the police does not convert a

2    private party into a state actor."[7]   Collins v. Womancare, 878 F.2d

3    1145, 1155 (9th Cir. 1989); Dietrich v. John Ascuaga's Golden Nugget,

4    548 F.3d 892, 900 (9th Cir. 2008); Rivera v. Green, 775 F.2d 1381, 1384

5    (9th Cir. 1985); see also Benavidez v. Gunnell, 722 F.2d 615, 618 (10th

6    Cir. 1983) ("The mere furnishing of information to police officers does

7    not constitute joint action under color of state law which renders a

8    private citizen liable under [section 1983]."); Ginsberg v. Healy Car

9    & Truck Leasing, Inc., 189 F.3d 268, 272 (2d. Cir. 1999) (same); Hughes

10   v. Meyer, 880 F.2d 967, 972 (7th Cir. 1989) ("[P]rivate parties are not

11   state actors when they merely call on the law for assistance, even

12   though they may not have grounds to do so.").   And this remains the

13   case even where, as here, a plaintiff alleges a private party has made

14   false allegations to the police.   See Peng v. Mei Chin Penghu, 335 F.3d

15   970, 980 (9th Cir. 2003) (private parties who allegedly gave false

16   information to police officer leading to plaintiff's arrest were not

17   state actors); Betts v. Shearman, 751 F.3d 78, 86 (2d Cir. 2014)

18   ("Betts's claim against Shearman as a state actor boils down to the

19   fact that he was arrested upon the false accusation of assault made

20   against him by a private citizen to the police.   This is insufficient

21   to state a plausible claim that Shearman and the arresting officers

22   shared a common goal of violating Betts's rights."); Lauter v.

23   Anoufrieva, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009) ("Providing

24

25      [7] "Nor is execution by a private party of a sworn complaint which
forms the basis of an arrest enough to convert the private party's acts
26   into state action."   Collins v. Womancare, 878 F.2d 1145, 1155 (9th
Cir. 1989); see also Moody v. Farrell, 868 F.3d 348, 353 (5th Cir.
27   2017) ("[E]vidence that a private citizen reported criminal activity or
signed a criminal complaint does not suffice to show state action on
28   the part of the complainant in a false arrest case.").

1   false information to the police does not transform a private individual

2   into a state actor.").

3

4       Accordingly, Plaintiff has failed to state a Section 1983 claim

5   against the Archdiocese and Semik, and Claim Four against these

6   Defendants should be dismissed with leave to amend.  See Lauter, 642 F.

7   Supp. 2d at 1088 & n.36 ("Although it is unlikely that plaintiff can

8   allege fact sufficient to state a Section 1983, the court nonetheless

9   recommends that plaintiff be granted one final opportunity to amend the

10  claim because it is not absolutely clear that the deficiencies therein

11  could not be cured by amendment.").

12

13  **C.**     **The Motions To Dismiss Plaintiff's State Law Claims Should Be**

14          **Denied**

15

16      In Claims One through Three, Plaintiff raises state law claims

17  against the Moving Defendants for violation of the Ralph Act, Bane Act,

18  and false imprisonment.   (FAC, ¶¶ 18-35).

19

20      When, as here, a district court has original jurisdiction over a

21  civil action, it may exercise supplemental jurisdiction over "all other

22  claims that are related to claims in the action within such original

23  jurisdiction that they form part of the same case or controversy under

24  Article III of the United States Constitution."   28 U.S.C. § 1367(a).

25  "Federal courts may exercise supplemental jurisdiction over a state law

26  claim if it shares a 'common nucleus of operative fact' with a federal

27  claim and if 'the state and federal claims would normally be tried

28  together.'"   Ventura Content, Ltd. v. Motherless, Inc., 885 F.3d 597,

1  619 (9th Cir. 2018) (citation omitted); <u>United Mine Workers of Am. v.</u>

2  <u>Gibbs</u>, 383 U.S. 715, 725 (1966); <u>Sauk-Suiattle Indian Tribe v. City of</u>

3  <u>Seattle</u>, 56 F.4th 1179, 1186 (9th Cir. 2022), <u>pet. for cert. filed</u>,

4  (Mar. 30, 2023).

5

6  The Moving Defendants have not addressed supplemental jurisdiction

7  even though this Court undoubtedly has federal question jurisdiction

8  over this action and the same state law claims remain pending against

9  Jabsi.  "The Court's role is not to make or develop arguments on behalf

10  of the parties, and [the Moving Defendants'] failure to present cogent

11  arguments [regarding supplemental jurisdiction] is enough to deny" the

12  Motions to Dismiss Plaintiff's state law claims.[8]  <u>Townsend v. Monster</u>

13  <u>Beverage Corp.</u>, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018); <u>see</u> <u>also</u>

14  <u>Western Radio Servs. Co. v. Qwest Corp.</u>, 678 F.3d 970, 979 (9th Cir.

15  2012) ("We will not do [a litigant's] work for it, either by

16  manufacturing its legal arguments, or by combing the record on its

17  behalf for factual support."); <u>Greenwood v. Fed. Aviation Admin.</u>, 28

18  F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for

19  [a litigant], and a bare assertion does not preserve a claim[.]").

20

21  Nor do the Moving Defendants discuss the elements necessary to

22  state a Ralph Act, Bane Act, or false imprisonment claim.  Rather,

23

24  [8]  While the Court can raise the issue of supplemental jurisdiction
25  <u>sua</u> <u>sponte</u> provided Plaintiff is given notice and an opportunity to be
heard, the Court declines to do so at this time under the particular
26  circumstances of this case.  <u>See</u> <u>Ho v. Russi</u>, 45 F.4th 1083, 1086 (9th
Cir. 2022) ("[T]he district court was required to provide Ho with
27  notice and an opportunity to be heard before sua sponte declining to
exercise supplemental jurisdiction and dismissing his state law
28  claim.").

17

apart from arguing that none of the state law claims establish federal jurisdiction, the only statement the Motions make particular to Plaintiff's state law claims is that "[t]he limited jurisdiction of this Court does not permit consideration of the under-pled state law causes of action alleged in the [FAC]."  (Archdiocese Mem. at 3, 5; Semik Mem. at 3, 5).  Thus, the Moving Defendants' discussion of Claims One through Three is entirely conclusory, and the Motions to Dismiss Claims One through Three should be denied on that basis as well.  See, e.g., Ventress v. Japan Airlines, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address an "undeveloped argument"); Haley v. Ornelas, 2016 WL 11519291, *3 (C.D. Cal. 2016) (declining to address conclusory assertions regarding why claims should be dismissed); Mazaheri v. Pederson, 2010 WL 11601578, *6-7 (C.D. Cal. 2010) ("Conclusory arguments made in a motion to dismiss are . . . deficient.  [The] argument is made in a total of four sentences, and . . . fails to explain what must be alleged with respect to each . . . element[ of the claim] and how the allegations in the FAC insufficiently do so. . . . Accordingly, the motion to dismiss the . . . claim . . . is DENIED.").

**V.**

**RECOMMENDATION**

It is recommended that the Court issue an Order (1) accepting and adopting this Report and Recommendation; (2) granting, in part, and denying, in part, the Moving Defendants' Motions to Dismiss (Dkt. Nos. 54-55), as follows: (a) granting the Motions to Dismiss as to Claim Four and dismissing this claim against the Moving Defendants with leave to amend; and (b) denying the Motions to Dismiss as to Claims One

through Three; (3) providing Plaintiff, within thirty (30) days from the date this Report and Recommendation is accepted, an opportunity to file a Second Amended Complaint that cures the pleading defects discussed herein, is complete in itself without reference to any prior complaint or any other document, and does not add any new claims or new defendants without obtaining prior leave of the Court; and (4) if Plaintiff does not file a Second Amended Complaint within thirty (30) days from the date this Report and Recommendation is accepted, requiring the Moving Defendants to file an Answer to Claims One through Three of the FAC no later than fourteen (14) days from the expiration of Plaintiff's time to file a Second Amended Complaint (i.e., forty-four (44) days from the date this Report and Recommendation is accepted).

DATED: July 20, 2023

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.